

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00466-CV

———————————————

PAMELA SUE KELLER, Appellant

V.

GREGORY A. KELLER, Appellee

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-560230-14

Before Sudderth, C.J.; Pittman and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In one issue, appellant Pamela Sue Keller contends that the trial court erred by terminating appellee Gregory A. Keller's obligation to provide spousal maintenance, as set forth in the parties' divorce decree. We reverse the trial court's order terminating maintenance and remand for further proceedings.

## Background Facts

Pamela and Gregory divorced in 2014. In their agreed divorce decree, they stipulated that Pamela was "eligible for maintenance" under chapter 8 of the Texas Family Code.[1] Accordingly, the trial court ordered Gregory to pay Pamela

---

[1]We note that a spousal-maintenance provision in an agreed divorce decree may be enforced as a contract outside the confines of chapter 8, and such a provision is not subject to chapter 8 "merely because it references chapter 8 or states that a spouse is eligible for spousal maintenance under chapter 8." *Waldrop v. Waldrop*, 552 S.W.3d 396, 403 (Tex. App.—Fort Worth 2018, no pet.) (en banc op. on reh'g); *see also Dalton v. Dalton*, 551 S.W.3d 126, 130–31 (Tex. 2018) (explaining the differences between chapter 8 court-ordered maintenance and court-approved contractual maintenance); *In re L.R.P.*, No. 05-14-01590-CV, 2016 WL 514174, at *3 (Tex. App.—Dallas Feb. 9, 2016, no pet.) (mem. op.) (stating that the "mere fact a trial court approves a contractual spousal support agreement and incorporates it into the divorce decree does not transform the support obligation into court-ordered maintenance subject to the . . . provisions of chapter 8"); *Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *2 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) ("The mere reference to family code chapter 8 in the divorce decree does not transform the contractual alimony obligation into a court-ordered maintenance obligation governed by that chapter.").

In the trial court, the parties did not present arguments concerning the extent to which the spousal-maintenance provisions at issue are contractually enforceable. Rather, the trial court terminated Gregory's maintenance obligation on the basis of his argument that the maintenance did not comply with provisions of chapter 8. We hold below that the trial court could not terminate the obligation on that basis in this

2

as maintenance the sum of one thousand two hundred thirteen dollars and sixty-eight cents ($1,213.68) per month[,] . . . with the first payment being due on October 1, 2014, and a like amount being due [the] 1st of each consecutive month thereafter until the earliest of one of the following events occurs:

> 1. death of either [party];
>
> 2. remarriage of [Pamela]; or
>
> 3. further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by [Pamela].
>
> IT IS FURTHER ORDERED that the amount of spousal maintenance shall be increased by 2% of [Gregory's] gross income every two years, with the first increase due two years from the date of this decree of divorce. [Gregory] shall provide a copy of his then-current payroll statement to [Pamela] upon request. [Pamela] shall be authorized to submit an Amended Employer's Withholding Order to the Court after the modification if she desires.

The divorce decree further recited that before the parties had signed the decree, they had read it

> fully and completely, . . . had the opportunity to ask any questions regarding the same, and fully underst[ood] that the contents of this Final Decree of Divorce constitute[d] a full and complete resolution of this case. [The parties] acknowledge[d] that they ha[d] voluntarily affixed

---

collateral proceeding, but we expressly decline to decide whether the parties' spousal-maintenance agreement is subject to chapter 8 or the extent to which the maintenance provisions in the agreed divorce decree are enforceable by contempt. *See* Tex. Fam. Code Ann. § 8.059(a)(2), (a-1) (West Supp. 2018) (stating that a court may enforce by contempt a contractual maintenance agreement that has been approved by the court but that the court "may not enforce by contempt any provision of an agreed order for maintenance that exceeds the amount of periodic support the court could have ordered under this chapter or for any period of maintenance beyond the period of maintenance the court could have ordered under this chapter").

their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets.

Almost three years later, in April 2017, Pamela filed a petition for enforcement of the spousal-maintenance obligation. She alleged that Gregory had refused to provide his payroll statement upon her request and asked the trial court to hold him in contempt. She also pleaded that if the trial court found any part of the divorce decree's spousal-maintenance provisions to be insufficiently specific to be enforced by contempt, the court should "enter a clarifying order restating the terms of the . . . decree . . . in a manner specific enough to allow enforcement."

Gregory responded by filing a motion for the trial court to find the spousal-maintenance obligation void. He asserted,

> The order sought to be enforced by [Pamela] is incapable of enforcement and is void,[2] in that it is ambiguous and is not clear and specific enough in its terms to meet the statutory requirements under Section [8.054] of the Texas Family Code. The Judgment must set forth the duration of the maintenance obligation.
>
> The parties were not married more [than] 10 years, nor was there a finding of domestic violence by the Court. In addition, [i]n the Judgment, there was no finding by the Court [that Pamela] was disabled nor that [Pamela] met the necessary eligibility requirements.

Pamela responded to Gregory's motion. She contended that even if the trial court did not have statutory authority to award spousal maintenance, the spousal-maintenance provisions were not void and were, at most, voidable. She also argued

---

[2]On appeal, however, Gregory asserts that the "question is not whether the spousal support provision in the decree was void or voidable."

4

that if the provisions were only voidable, they were not subject to a collateral attack through Gregory's motion.

The trial court held a hearing. Gregory testified that he married Pamela in 2005 and divorced her in 2014, a period of less than ten years. He also testified that the decree did not contain a finding that he had committed family violence against Pamela or that she had a disability and that the decree did not have an ending date for his spousal-maintenance obligation. He acknowledged, however, that prior to the divorce, Pamela had been "granted disability [benefits] from Social Security." He testified that since the decree, he had paid Pamela more than $43,000 in maintenance, and he asked the court to terminate that obligation.

Pamela testified that her disability resulted from brain surgery in 2007; she explained that from "that point forward," she had problems with memory retention and with mental and verbal communication. She testified that she was not able to work because she had "mass memory retention issues" and seizures.

At the end of the hearing, the trial court explained that it would terminate the maintenance obligation because the law says "that [a finding of disability supporting the obligation] has to be specific." The trial court signed an order in which the court found that the spousal-maintenance obligation was not enforceable and terminated the obligation because (1) the decree did not set forth the duration of the maintenance obligation, and (2) the decree did not contain a finding that established Pamela's eligibility for maintenance. Pamela brought this appeal.

5

**The Trial Court's Order Terminating Spousal Maintenance**

In one issue, Pamela argues that the trial court erred by modifying the divorce decree to terminate Gregory's spousal-maintenance obligation. She contends that Gregory did not prove appropriate grounds for modification of the obligation under the Texas Family Code and that the trial court's apparent grounds for terminating the obligation—that Pamela was never statutorily eligible for a maintenance award and that the decree failed to set forth the duration of the maintenance obligation—could not be considered in a collateral attack on the decree.

Chapter 8 of the family code establishes circumstances when a trial court may order spousal maintenance. *See* Tex. Fam. Code Ann. § 8.001(1) (West 2006) (defining "[m]aintenance" as an "award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse"), § 8.051 (West Supp. 2018) (describing conditions of eligibility for an award of spousal maintenance). Section 8.051 states that in a divorce proceeding, a court may order maintenance if the spouse seeking maintenance lacks sufficient property to provide for minimum reasonable needs and

> (1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that . . . constitutes an act of family violence . . . .; or
>
> (2) the spouse seeking maintenance:
>
>> (A) is unable to earn sufficient income to provide for the spouse's minimum reasonable needs because of an incapacitating physical or mental disability;

(B) has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs; or

(C) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability that prevents the spouse from earning sufficient income to provide for the spouse's minimum reasonable needs.

*Id.* § 8.051(1)–(2).

A court that orders maintenance under chapter 8 must determine the "nature, amount, duration, and manner of periodic payments by considering all relevant factors." *Id.* § 8.052 (West Supp. 2018). The family code provides for durational limits on maintenance obligations depending on the length of the parties' marriage and on the obligee's basis of eligibility for maintenance. *Id.* § 8.054(a)–(b) (West Supp. 2018). The family code also limits the amounts of maintenance that a court may order. *Id.* § 8.055 (West Supp. 2018). Finally, the code provides that a court may modify a maintenance obligation "on a proper showing of a material and substantial change in circumstances . . . relating to either party or to a child of the marriage." *Id.* § 8.057(c) (West Supp. 2018).

When Gregory asked the trial court to terminate his maintenance obligation, he argued that (1) the obligation was incapable of enforcement because with regard to duration of the obligation, the decree was "ambiguous"; and (2) Pamela was not eligible for maintenance because the trial court did not find in the decree that the parties were married more than ten years, that he committed family violence against

7

her, or that she was disabled. The trial court relied on these arguments, and no others, in its order terminating maintenance. Pamela contends in this court, as she did in the trial court, that these bases for challenging the decree's maintenance provisions, even if valid, were required to be raised in a direct appeal from the decree, while the trial court still had plenary power over the decree, and cannot be raised through a collateral attack in this proceeding.

Jurisdictional errors in divorce proceedings—errors resulting from a trial court's lack of jurisdiction over parties or over subject matter—may render a judgment void and subject to collateral attack in a separate proceeding. *See Tome v. Tome*, No. 02-14-00037-CV, 2014 WL 3953638, at \*1 (Tex. App.—Fort Worth Aug. 14, 2014, no pet.) (mem. op.) (citing *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990)). But errors in a divorce decree that are not jurisdictional, such as errors resulting from a court's action that is contrary to the family code, render a judgment only voidable and may "be corrected only through a direct appeal." *Id.* When a divorce decree "is not appealed and appears regular on its face, the judgment will not be subject to a collateral attack in a subsequent suit." *Id.; see Lowery v. Lowery*, No. 01-16-00147-CV, 2017 WL 6520428, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, no pet.) (mem. op.) ("Errors other than lack of jurisdiction over the parties or the subject matter render the judgment voidable and may be corrected only through a direct appeal. Res judicata applies to a final divorce decree just as it does to any other final judgment, barring subsequent collateral attack." (citation omitted)); *Hardin v.*

8

*Hardin*, 597 S.W.2d 347, 350 (Tex. 1980) ("It is well established in Texas that a divorce judgment, unappealed, and regular on its face, is not subject to a collateral attack in a subsequent suit."); *see also Segrest v. Segrest*, 649 S.W.2d 610, 612 (Tex.) ("A final judgment settles not only issues actually litigated, but also any issues that could have been litigated. That the judgment may have been wrong . . . does not affect application of *res judicata*."), *cert. denied*, 464 U.S. 894 (1983).

In *Tome*, years after the trial court signed a divorce decree from which the spousal-maintenance obligor did not appeal, the obligor challenged the obligation on the basis that the trial court had not had authority to order him to pay $173,200 in two lump sums, and the trial court signed an order finding that it had not had jurisdiction to award spousal maintenance under chapter 8. 2014 WL 3953638, at *1. On appeal, the obligee conceded that the lump-sum obligations were improper but argued that the trial court lacked authority to render the maintenance obligation void in a collateral challenge. *Id.* We held that the maintenance exceeded the "statutory provisions that governed spousal maintenance" but held that the illegality rendered the maintenance obligation only voidable and not subject to challenge in a collateral proceeding. *Id.* at *2.

In accordance with our decision in *Tome*, Texas courts have repeatedly held that a party must raise an argument that a trial court violated the family code in ordering maintenance in a direct challenge to the divorce decree and not through a collateral attack. *See, e.g.*, *Lowery*, 2017 WL 6520428, at *3–5 (holding that because neither party

9

appealed a divorce decree, the decree was not subject to collateral attack on issues concerning the obligee's eligibility for maintenance or the duration of the maintenance); *Thompson v. Thompson*, No. 05-16-00026-CV, 2017 WL 2871423, at *2 (Tex. App.—Dallas June 30, 2017, no pet.) (mem. op.) (holding that an obligor's complaints that maintenance violated family code sections 8.054 and 8.055—which concern duration and amount of maintenance awards—could not be brought through a collateral attack). More broadly, Texas courts have also held that other provisions in final divorce decrees are not subject to collateral attack on arguments that the provisions were merely unlawful. *See, e.g.*, *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) ("George's remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment."); *In re M.M.*, 357 S.W.3d 841, 843 (Tex. App.—El Paso 2012, no pet.) (holding similarly); *Shoberg v. Shoberg*, 830 S.W.2d 149, 152 (Tex. App.—Houston [14th Dist.] 1992, no writ) (op. on reh'g) (explaining that a "judgment based upon erroneous holdings as to substantive law is not void" and is not subject to collateral attack).

We have not found authority indicating that a divorce decree's alleged failure to specify the duration of the maintenance obligation[3] or an obligee's alleged ineligibility

---

[3]As recited above, the decree stated that Gregory's maintenance obligation would end on (1) either party's death, (2) Pamela's remarriage, or (3) "further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by [Pamela]." Although Gregory argued in the trial court and contends in this court that these terms were ambiguous, and although the trial court so found, Texas courts, including this court, have held otherwise. *See Waldrop*, 2018 WL

10

for maintenance at the time of the decree[4]—the two grounds of Gregory's motion to terminate—are jurisdictional errors that may support a challenge to a decree in a collateral proceeding. Gregory has not directed us to any such authority. Under the cases cited above, we conclude that these alleged errors are not jurisdictional, do not render the decree void, and cannot serve as grounds for a challenge to the decree in this collateral proceeding. *See Hardin*, 597 S.W.2d at 350; *Lowery*, 2017 WL 6520428, at *3–5; *Tome*, 2014 WL 3953638, at *1. Therefore, we conclude that the trial court erred by terminating Gregory's spousal-maintenance obligation on the grounds specified in the court's order.[5]

---

2728438, at *10; *Lowery*, 2017 WL 6520428, at *4. Gregory also argues in this court that the provision of the decree that increases maintenance by 2% of Gregory's gross income every two years is ambiguous, but Gregory did not present that argument in the trial court, and the trial court did not rely on it. Thus, we decline to consider this argument (along with other arguments briefed on appeal but not raised in the trial court) as a ground for affirming the trial court's order. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied) (refusing to affirm a trial court's order based on a legal theory not presented to the trial court); *Barber Lumber & Mfg. Co. v. Reeves*, 40 S.W.2d 248, 249 (Tex. Civ. App.—Beaumont 1931, no writ) ("[A]ppellee is confined to the issues made by his pleadings, and we cannot affirm the judgment upon a theory . . . not raised by the pleadings.")

[4]The agreed decree recited that "under the circumstances presented in this case, [Pamela was] eligible for maintenance under the provisions of . . . chapter 8." Our sister court in Amarillo has stated that when an obligor agrees to pay maintenance, the obligor "implicitly represent[s] to the court that [the obligee is] entitled to that maintenance and . . . is bound by that representation." *Bailey v. Bailey*, No. 07-14-00158-CV, 2016 WL 638058, at *4 n.2 (Tex. App.—Amarillo Feb. 5, 2016, no pet.) (mem. op.).

[5]We emphasize that the trial court based its termination order on the alleged ambiguity of the duration of the maintenance obligation and on Pamela's alleged

11

Gregory relies on subsections (c) and (d) of section 8.054 of the family code to contend that the trial court had authority to review and terminate his maintenance obligation. Those subsections state that when a trial court has ordered maintenance on the ground that the obligee had an incapacitating disability or that the obligee was the custodian of a child with a disability, the trial court may periodically review its order for maintenance and may modify it. *See* Tex. Fam. Code Ann. § 8.054(b)–(d); *see also id.* § 8.051(2)(A), (C); *Hackenjos v. Hackenjos*, 204 S.W.3d 906, 909 (Tex. App.—Dallas 2006, no pet.) (explaining that the "periodic review" available to a court under section 8.054(c) is a limited exception to section 8.057(c)'s general requirement of a material and substantial change for modification of a maintenance order). The record in this case, however, forecloses the possibility that the trial court relied on those subsections to review and modify the divorce decree because in its termination order, the trial court expressly found that Pamela was not eligible for maintenance on the

ineligibility for benefits—that is, alleged errors of law in the divorce decree—not on any authority granted to the court by the "further orders of the Court affecting the spousal maintenance obligation" language in the decree.

On appeal, Gregory asserts that the trial court did not merely modify the decree. We agree. And even if we were to broadly construe the trial court's order as granting modification of the maintenance obligation under section 8.057 of the family code on the basis of a "material and substantial change in circumstances," the evidence in this case does not prove such a change. *See* Tex. Fam. Code Ann. § 8.057(c). In fact, Gregory conceded that "nothing ha[d] changed" in his circumstances.

12

ground of any disability. Thus, we cannot conclude that provisions within subsection 8.054 support the trial court's order terminating maintenance.

For all of these reasons, we conclude that the trial court erred by amending the parties' final divorce decree through terminating Gregory's obligation to pay spousal maintenance. We sustain Pamela's only issue.

## Conclusion

Having sustained Pamela's sole issue, we reverse the trial court's "Order on Motion to Modify Spousal Maintenance or Terminate" and remand this case to the trial court for further proceedings on Pamela's "Amended Petition for Enforcement of Spousal Maintenance."

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: October 4, 2018

13